UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                       :
AMIRAH MERCER,                         :
                                                       :
                          Plaintiff,    :        22 Civ. 6322 (LGS)
                -against-                  :
                                                       :       **OPINION AND ORDER**
VIACOMCBS/PARAMOUNT,          :
                                Defendant.  :
                                                       :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Pro se Plaintiff Amirah Mercer brings this action against Defendant

VIACOMCBS/PARAMOUNT, for violations of the Americans with Disabilities Act ("ADA"),

the New York City Human Rights Law ("NYCHRL"), the New York State Human Rights Law

("NYSHRL"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Genetic Information

Nondiscrimination Act ("GINA"), the Rehabilitation Act, Centers for Disease Control ("CDC")

guidelines, Occupational Safety and Health Administration ("OSHA") guidelines, 42 U.S.C.

§ 1983 ("Section 1983") and 18 U.S.C. § 242, and for wrongful termination. Defendant moves

under Rule 12(b)(6) to dismiss all claims in the Second Amended Complaint ("SAC"). The

motion is granted because the SAC fails to state any claim upon which relief can be granted.

## I.     BACKGROUND

       The following facts are taken from the SAC, its attachments and documents it

incorporates by reference. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021). These facts are

assumed to be true for purposes of this motion and are construed in the light most favorable to

Plaintiff as the non-moving party. *See Int'l Code Council, Inc. v. UpCodes Inc*., 43 F.4th 46, 53

(2d Cir. 2022).

Plaintiff was employed by Defendant.  In the fall of 2021, Defendant required all employees who worked in-person at Defendant's offices to become fully vaccinated against COVID-19 by January 10, 2022.  Employees were allowed to seek exemptions from the mandate for medical or religious accommodations.

Plaintiff submitted several requests for exemption from the vaccination requirement.  In September 2021, Plaintiff submitted an exemption request through Defendant's third-party human resources ("HR") and leave platform called UNUM, which resulted in her being referred to Defendant's HR department.  On November 2, 2021, Plaintiff submitted a request for a medical exemption to Defendant's HR department and attached two supporting documents, which are also attached to the SAC.  The first document is a fill-in-the-blank, unsigned "Affidavit for Tribal Medical Contraindication to Vaccine," purportedly from Dr. Amaru Xi-Ali on behalf of the Aboriginal Medical Association, dated September 14, 2021.  The document states that Plaintiff is contraindicated from receiving a COVID-19 vaccine because "Clients genetic bio-variance could cause massive allergic reaction to mRNA complimentary modified dna in vaccine and induce massive receptor membrane changes that impact the HLA/MHC formation of the client that adversely impacts client's immunity permanently and clients future offspring."  The second document is titled Tribal Medical Contraindication to Vaccination issued by the Indigenous Political Authority, Xi-Amaru Tribal Government.  The document states that people of the Xi-Amaru tribal government have a "natural, personal and political right" to exemptions from required vaccinations, and that "[f]orced Vaccinations are an ACT OF GENOCIDE . . . against Peoples allergic to their contents and who can have short term and long-term adverse impact due to the vaccination."  The document is signed by Plaintiff and notarized on September 16, 2021.

On November 24, 2021, Plaintiff received a response from Defendant's HR department denying Plaintiff's medical exemption request. The response states, "Although these documents refer to the possibility of allergic reactions to the COVID-19 vaccine (and other impacts), and other individuals who have allergic reactions to the COVID-19 vaccine, these documents do not advise that you presently have any medical condition which renders you medically unable to receive a COVID-19 vaccine."

Plaintiff spoke by phone with another member of Defendant's HR department on November 29, 2021, and received a follow-up email from HR on December 6, 2021. The email states that Plaintiff could apply for a religious accommodation and provided Plaintiff with the process for doing so.

On December 6, 2021, Plaintiff submitted a religious accommodation request, which was denied on January 7, 2022. On January 26, 2022, Plaintiff re-submitted the supporting documents previously submitted with her medical exemption request. On January 31, 2022, Plaintiff submitted a request to continue working from home, which was denied. Plaintiff was terminated on March 21, 2022.

Plaintiff submitted an inquiry with the Equal Employment Opportunity Commission (the "EEOC") on July 19, 2022. The adverse actions listed include denial of Plaintiff's medical and religious accommodation requests, resulting in her termination. Plaintiff responded to the question of whether she has a disability with the statement, "I do not have a disability." On July 22, 2022, Plaintiff filed this action.

On September 21, 2022, Plaintiff filed a Charge of Discrimination with the EEOC, stating that her medical exemption was denied despite her providing legal and medical documentation. The only box selected as a reason for discrimination is Genetic Information. At

Plaintiff's request, the EEOC issued a notice of right to sue on September 28, 2022, which states that the notice is issued under Title VII, the ADA or GINA.

On December 18, 2022, before Defendant was served, Plaintiff filed a first amended complaint. Defendant moved to dismiss the first amended complaint on July 22, 2023. After briefing was completed on the motion to dismiss, on October 2, 2023, Plaintiff filed the operative SAC, which the Court construed as a request for leave to amend and granted. Defendant moved to dismiss the SAC.

## II.  STANDARD

On a motion to dismiss, a court accepts as true "all well-pleaded factual allegations" and draws all reasonable inferences in favor of the non-moving party but does "not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).[1] To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co*., 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[ ] . . . claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

In considering a motion to dismiss for failure to state a claim, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). "Moreover, even if a document is not expressly incorporated by reference, the court may still consider it if the complaint relies heavily upon its terms and effect, rendering the document integral to the complaint." *Id.*

It is well established that "pro se submissions are reviewed with special solicitude and must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021).

## III.    DISCUSSION

### A.    ADA Claims (Counts I, VIII, IX)

As explained below, Plaintiff has exhausted her administrative remedies to pursue a disability discrimination claim under the ADA, but the SAC fails to plead sufficient facts to state a claim under the ADA because it does not allege facts showing that Plaintiff has a legally protected disability.

#### 1.    Exhaustion

Plaintiff has administratively exhausted her ADA claim for disability discrimination, but has not exhausted her claim for retaliation. Under the ADA, in order to pursue a claim in federal court, plaintiffs "must exhaust administrative remedies through the EEOC." *Soules v. Conn.,*

*Dep't of Emergency Servs. & Pub. Prot*., 882 F.3d 52, 57 (2d Cir. 2018); *accord Rosado v. Port Auth. of N.Y. & N.J.*, No. 22-587, 2024 WL 658776, at *2 (2d Cir. Feb. 16, 2024) (summary order) ("[P]laintiffs asserting claims under the ADA must first file a charge of discrimination with the EEOC.").  Administrative exhaustion in both "the Title VII and ADA context is not a jurisdictional prerequisite, but only a precondition to bringing suit that can be waived by the parties or the court."  *Anderson v. City of New York*, No. 22 Civ. 3990, 2024 WL 183103, at *6 n.6 (S.D.N.Y. Jan. 17, 2024).  "However, the Court should grant a motion to dismiss if [non]exhaustion is clear from the face of the complaint (and incorporated documents)."  *Id*.

 "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  *Soules*, 882 F.3d at 57.  A claim "is reasonably related to conduct in an EEOC charge if . . . the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination."  *Id*.

Defendant argues that Plaintiff's ADA claims were not included in her EEOC charge and are not reasonably related to the charge as the charge includes only a claim of genetic information discrimination and not claims of disability discrimination.  Although Plaintiff focuses on genetic information as the source of the discrimination and states that she does not have a disability in her EEOC inquiry, it is reasonable to infer that a denied medical accommodation, which was the primary claim made, would implicate the ADA and that the EEOC would investigate possible disability discrimination on that basis.  Defendant's arguments to the contrary based on *Shi v. Batgatelle International, Inc*., No. 20 Civ. 8473, 2023 WL 4187557, at *7 (S.D.N.Y. June 26, 2023), are unpersuasive.  In that case, the plaintiff's primary complaints in the charge were race- and national origin-based discrimination, and she did not

check the box for a disability claim.  *Id*.  Here, both Plaintiff's EEOC inquiry and charge primarily reference a denied medical accommodation request.  Plaintiff's ADA claims based on disability discrimination are reasonably related to the claims Plaintiff exhausted through the EEOC.

Plaintiff has not exhausted her retaliation claims, either under the ADA or Title VII, as those claims are not reasonably related to the conduct in the charge.  The charge does not reference any retaliation for seeking a vaccine exemption.  The charge states that Plaintiff was "unfairly released from the company," but does not suggest Plaintiff believed that this termination was the result of her seeking accommodations or the result of any activity protected by the ADA or Title VII.  Rather, the charge suggests that Plaintiff's claim is that she was wrongly denied a medical exemption, that she refused the vaccine despite her lack of exemption and that, as a result, she was terminated for failing to comply with company policy.  Plaintiff also did not select the box for retaliation on the charge.  The EEOC could not reasonably infer that Plaintiff sought to bring a claim that her termination was in retaliation for her seeking an accommodation.  Plaintiff therefore has not administratively exhausted her ADA or Title VII claims of retaliation for seeking an exemption to the vaccine mandate.

Plaintiff also filed this suit prior to obtaining a right to sue notice, but that failure is excused on equitable grounds.  "The right to sue letter is a necessary prerequisite to filing suit," both under the ADA and Title VII.  *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 177 (S.D.N.Y. 2023) (discussing the right to sue notice under the ADA); *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (discussing the right to sue notice under Title VII), *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024).  This requirement is not jurisdictional and may be "waived by the parties or the court," or

"excused by the [c]ourt on equitable grounds." *Syeed*, 568 F. Supp. 3d at 321. "Courts in this circuit have already held that where a plaintiff has received a right to sue letter subsequent to commencement of a [discrimination] action and while the federal action is still pending, the statutory exhaustion requirements have been met based on equitable principles." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y*, 651 F. Supp. 3d 695, 702 n.1 (S.D.N.Y. 2023). Plaintiff filed suit on July 22, 2022, after filing her initial inquiry with the EEOC on July 19, 2022, and did not receive a right to sue letter until September 28, 2022. Because Plaintiff received her right to sue notice while this action was pending, her filing suit before receiving the notice is excused on equitable grounds.

## 2.    Protected Disability

The SAC does not state a sufficient ADA claim because the SAC does not allege that Plaintiff had a disability within the meaning of the ADA. A sufficient ADA claim must allege, among other things, facts showing that the plaintiff had a disability. *See Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005); *Johnson v. Mount Sinai Hosp. Grp., Inc*., No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (summary order). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002); *accord Patterson v. EmblemHealth Inc*., No. 22 Civ. 2177, 2023 WL 5671531, at *4 (S.D.N.Y. Sept. 1, 2023). After amendment of the ADA in 2008, "the term 'substantially limits' shall be construed broadly in favor of expansive coverage . . . and is not meant to be a demanding standard. Relatedly, the term 'substantially limits' is to be interpreted and applied to require a lower degree of functional limitation than the standard required" prior to the amendment. *Hamilton v. Westchester Cnty*., 3 F.4th 86, 92 (2d Cir. 2021).

The Complaint alleges that "Plaintiff has a disability as defined by the ADA," "has a medical allergy/contraindication to all COVID 19 Vaccine," "has never received any COVID 19 vaccines" and that she can be provided an exemption if she "has known diagnosed allergy to component in all three Covid 19 vaccines."  Among the exhibits to the Complaint are two documents that Plaintiff submitted to Defendant in support of her request for a medical exemption.  The first document is a fill-in-the-blank, "Affidavit for Tribal Medical Contraindication to Vaccine."  Handwritten entries are provided for Plaintiff's name, date of birth, the type of immunization ("COVID-19 / CORONAVIRUS"), and date of the affidavit. Included in the typewritten text is the typewritten signature of the purported affiant -- Dr. Amaru Xi-Ali on behalf of the Aboriginal Medical Association.  Also typewritten is the statement that Plaintiff "is medically contraindicated" from receiving a COVID-19 vaccine because "Clients genetic bio-variance could cause massive allergic reaction . . . ."  The document does not state that Plaintiff actually has an allergy to the COVID-19 vaccine or that the vaccine would cause her to have an allergic reaction, merely that it could.  The second document, titled "Tribal Medical Contraindication to Vaccination," is issued by the Indigenous Political Authority, Xi-Amaru Tribal Government, but does not address Plaintiff's own medical condition.

These allegations and documents are insufficient to plead that Plaintiff has a disability as defined by the ADA.  The SAC asserts in a conclusory manner that Plaintiff has a qualifying disability, but the SAC and its exhibits also make clear that the assertion of an allergy to the vaccine is speculative and medically unsupported.  The SAC states not only that Plaintiff has never had a COVID vaccine, but also that she has never had any vaccines.  Accordingly, the SAC does not allege that Plaintiff has suffered an allergic reaction to the vaccine, much less one that substantially limits a major life activity, or any activity at all.  Likewise, the SAC states

possible COVID-19 vaccination side effects but does not allege that Plaintiff has experienced any of these side effects.  An alleged medical contraindication to a vaccine, even if predicated on prior adverse reactions to a vaccination, is insufficient to allege a protected disability if it does not result in "a substantial limitation of a major life activity."  *See Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 160, 164-65 (S.D.N.Y. 2020), *aff'd*, No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) (finding that a plaintiff who had previously experienced allergic reaction to flu vaccination, and was contraindicated from receiving flu vaccine on that basis, had failed to show that she had a protected disability under the ADA).  The SAC does not allege that Plaintiff has a disability as defined by the ADA, and as a result, the SAC does not state a claim of disability discrimination under the ADA.

In her opposition to the motion to dismiss, Plaintiff seems to argue that she also has asthma, which counts as a disability under the ADA.  "[I]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 227 n.5 (S.D.N.Y. 2023).  Such an amendment likely would be futile because any claim for wrongful termination under the ADA would have to plead facts alleging that Plaintiff "suffered adverse employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2nd Cir. 2020).  Similarly, any claim for failure to accommodate under the ADA would have to plead facts alleging that Plaintiff could have performed the essential functions of her job with a reasonable accommodation and that Defendant refused to make that accommodation.  *See Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023).  Nothing in the record suggests that Plaintiff was fired on account of her having asthma, or that she requested an exemption from the vaccine because of her asthma.

### B.    Other Claims Based on Medical Disability

### 1.    NYCHRL and NYSHRL Claims (No Count)

The SAC is construed to assert claims for failure to accommodate and wrongful termination under the NYCHRL or the NYSHRL.  These claims are dismissed for the same reasons as the SAC's ADA claims.

Section 8-107(1)(a) of the NYCHRL prohibits employment discrimination based on an "actual or perceived . . . disability."  N.Y.C. Admin. Code § 8-107(1)(a).  The statute defines "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment."  *Id*. § 8-102.  The NYCHRL is broader than the ADA in its definition of disability because the NYCHRL does not "require[] any showing that the disability substantially limits a major life activity."  *Statuto v. NIKE, Inc*., No. 23 Civ. 1788, 2024 WL 1380810, at *3 (S.D.N.Y. Mar. 29, 2024).  "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible."  *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth*., 11 F.4th 55, 68 (2d Cir. 2021).

The NYSHRL is now also more generous than federal law.  For claims that accrued on or after October 11, 2019, the effective date of recent amendments, "the standard for [NYSHRL] claims [is] closer to the standard of the NYCHRL."  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021).  Because all of Plaintiff's NYSHRL claims stem from events occurring after the 2019 amendments, they "rise and fall with her NYCHRL claims."  *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024).

The alleged contraindication to the vaccine does not meet the NYCHRL's or NYSHRL's more lenient standard for a disability.  The SAC, as described above, alleges that Plaintiff may have an allergic reaction to the vaccine.  It does not allege that Plaintiff actually has an allergy that constitutes a physical or medical impairment.  As a result, the SAC does not state a claim under the NYCHRL or NYSHRL.

### 2.    Wrongful Termination (Count VIII)

The SAC includes allegations of wrongful termination as a separate count of the complaint but does not raise additional causes of action for that count beyond Title VII, the ADA and OSHA.  As explained, the SAC does not state claims under these laws or regulations, and so this count is dismissed.

### C.    GINA Claims (Count II)

The SAC does not state a claim under GINA because the SAC does not allege facts sufficient to show that Defendant discriminated against Plaintiff because of her genetic information.  GINA prohibits employment discrimination "because of genetic information with respect to the employee," and prohibits employers from "request[ing], requir[ing], or purchas[ing] genetic information with respect to an employee," with certain exceptions.  42 U.S.C. § 2000ff-1.  GINA defines genetic information as "information about -- (i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual."  *Id.* § 2000ff.  To state a claim under GINA, "a plaintiff must allege (1) that [she] was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from Plaintiff's genetic tests."  *Harris v. Archcare at Mary Manning Walsh Nursing Home*, No. 23 Civ. 1799, 2023 WL 5101503, at *2 n.2 (S.D.N.Y. Aug. 7, 2023).

The SAC alleges that Defendant requested authorization to access Plaintiff's genetic information, used genetic information to terminate Plaintiff wrongfully and discriminated against Plaintiff due to her choice not to modify her genetic structure by receiving the vaccine.  The SAC also incorporates an authorization, signed by Plaintiff, allowing health information to be shared with UNUM, Defendant's third-party leave administrator.  These allegations are insufficient to state a claim under GINA as they do not allege Plaintiff was terminated because of information from Plaintiff's genetic tests as defined by GINA.  *See Karupaiyan v. CVS Health Corp.*, No. 19 Civ. 8814, 2021 WL 4341132, at *7 n.13 (S.D.N.Y. Sept. 23, 2021) (dismissing the plaintiff's GINA claim because "[n]owhere in the Amended Complaint does [p]laintiff suggest that any [d]efendant possessed or considered any of his genetic information, as statutorily defined.").  The SAC alleges only that Defendant and UNUM were authorized to access Plaintiff's health information, but does not allege that either had access to -- or did at any point access -- any specific genetic testing information regarding Plaintiff or her family, or any information regarding diseases or disorders in her family.  The allegation that Plaintiff chose not to modify her genetic structure is not the type of genetic information protected by GINA, which requires discrimination because of specific genetic test results or diseases that Plaintiff or her family currently have.  *See* 42 U.S.C. § 2000ff.  Nor does the SAC allege that Defendant took adverse employment action against Plaintiff because of any genetic information Defendant had about Plaintiff.  The SAC does not state a claim under GINA.

### D.    CDC Guidelines (Count III)

The SAC does not state a claim under the CDC guidelines because those guidelines do not have the force of law.  The SAC alleges that Defendant's failure to accept Plaintiff's contraindication documents violated CDC guidelines.  The CDC's COVID-19 guidelines never

"purported to interpret some rule or regulation with force of law capable of being violated," and "did not constitute laws, rules, or regulations." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 98-99 (S.D.N.Y. 2020); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (noting that agency policy statements, manuals and enforcement guidelines "lack the force of law"). As a result, failing to follow CDC guidelines does not create a private right of action that can be pursued before a court. The SAC's allegations related to CDC guidelines do not state a claim upon which relief can be granted.

### E.    OSHA (Counts IV, V and VI)

The SAC does not state a claim under OSHA regulations as OSHA can be enforced only by the Secretary of Labor. "Under OSHA, employees do not have a private right of action." *Donovan v. Occupational Safety & Health Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) (OSHA "permit[s] the Secretary, proceeding before an administrative agency, (1) to obtain abatement orders requiring employers to correct unsafe working conditions and (2) to impose civil penalties on any employer maintaining any unsafe working condition."); *accord Quirk v. DiFiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022) (an employee "cannot bring a lawsuit under OSHA."). The OSHA claims are dismissed.

### F.    Title VII (Count VII)

Unlike the medical disability claims, the SAC's Title VII claim of discrimination on the basis of religion and Title VII claims of retaliation for seeking accommodations, discussed above, were not administratively exhausted. Like ADA claims, Title VII claims are exhausted if they were brought before the EEOC or if they are reasonably related to claims brought before the EEOC. *See Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023). A claim is reasonably related to

the conduct in an EEOC charge if "the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination." *Soules*, 882 F.3d at 57.

Plaintiff's initial EEOC charge does not discuss conduct that is reasonably related to her current claims. The SAC alleges Title VII claims of discrimination on the basis of religion and retaliation for seeking accommodations. Plaintiff's EEOC charge states only that her "medical exemption was denied despite providing legal and medical documentation." The charge does not reference religion or Plaintiff's beliefs and, as discussed above, the only basis for discrimination that Plaintiff selected on the EEOC charge was genetic information. A claim of religious discrimination would not fall within the reasonably expected scope of an EEOC investigation as there was no basis in the charge for the EEOC to determine that Plaintiff had raised any religion-related claims. *See Anderson*, 2024 WL 183103, at *5 (dismissing race and religion discrimination claims for lack of exhaustion where in the EEOC charge, "[n]owhere does [p]laintiff's description of the alleged discrimination mention, or even hint at, her race or religion."); *Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 204 (S.D.N.Y. 2021) (collecting cases and concluding plaintiff failed to exhaust ADEA claims when he did not check the box for age discrimination or allege any facts concerning discrimination based on age before the EEOC).

Plaintiff's initial EEOC inquiry states that she had applied for and been denied both a medical and a religious exemption and that she "had the support of [her] manager that vaccination was against [her] beliefs," but again states only genetic information as the basis for the complaint and does not detail what Plaintiff's beliefs were. This information was also omitted from Plaintiff's eventual EEOC charges. The initial inquiry is therefore not sufficient to

bring Plaintiff's religious discrimination claims into the reasonably expected scope of the EEOC investigation, and these claims have not been administratively exhausted.

### G.    Rehabilitation Act Claim (Count X)

The SAC fails to state a Rehabilitation Act claim because the SAC does not allege that Defendant receives federal funding.  "The Rehabilitation Act provides that no individual shall be subject to discrimination in any program or activity receiving federal financial assistance solely by reason of her or his disability."  *Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019); *Ramirez v. Bernstein*, No. 17 Civ. 3825, 2020 WL 7230729, at \*7 (S.D.N.Y. Dec. 7, 2020) ("Additionally, to establish a violation under [the Rehabilitation Act], a plaintiff must show that the defendants receive federal funding.").  The Rehabilitation Act claim is dismissed.

### H.    42 U.S.C. § 1983 (No Count)

The SAC references Section 1983 and is construed to assert a claim that Defendant violated Plaintiff's Due Process and First Amendment rights.  That claim is dismissed because Section 1983 claims can be brought only against state government entities or individuals acting on behalf of a state government.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Buon*, 65 F.4th at 78.  The SAC does not allege that Defendant was a state actor or acting under the color of state law.  This claim is dismissed.

### I.    18 U.S.C. § 242 (No Count)

The SAC references 18 U.S.C. § 242, a criminal statute, and is deemed to assert a claim that Defendant's rejection of Plaintiff's contraindication violated this statue.  This allegation likewise does not state a claim as "federal criminal statutes do not provide private causes of

action." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order); *accord Jallow v. City of New York*, No. 20 Civ. 6511, 2021 WL 1867629, at *3 (S.D.N.Y. May 7, 2021). This claim is dismissed.

**J.    Leave to Amend**

Pursuant to Federal Rule of Civil Procedure 15, a "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial of leave to amend is proper if amendment would be futile. *McCracken v. Verisma Sys., Inc*., 91 F.4th 600, 609 (2d Cir. 2024). Ultimately, it is "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp*., 22 F.3d 458, 462 (2d Cir. 1994); *accord Hartmann v. Popcornflix.com LLC*, 690 F. Supp. 3d 309, 321 (S.D.N.Y. 2023).

Plaintiff may seek leave to amend only her ADA, NYCHRL, NYSHRL, GINA and Rehabilitation Act claims. To decide whether to seek permission to amend, Plaintiff shall review this decision carefully as to each claim she seeks to amend to ensure that any future pleadings allege required facts. To state an ADA, NYCHRL or NYSHRL claim for disability discrimination, Plaintiff would have to plead additional facts explaining why she personally is disabled as defined by those laws. To state a GINA claim, Plaintiff would have to plead additional facts that demonstrate what specific genetic information Defendant had possession of and how that information was used to discriminate against Plaintiff. To state a Rehabilitation Act claim, Plaintiff would have to plead additional facts to show that Defendant received federal funding. Plaintiff should not seek leave to amend any claim for which she does not have sufficient additional facts. Plaintiff shall not seek to amend claims based on CDC guidelines, OSHA guidelines, Section 1983, 18 U.S.C. § 242 or Title VII because the deficiencies in those claims cannot be cured.

17

If Plaintiff chooses to seek leave to amend, she may do so by filing a letter on or before August 23, 2024, explaining how the deficiencies are cured and including as an attachment a proposed third amended complaint marked to show changes compared with the SAC. If Plaintiff determines that she cannot in good faith cure the deficiencies, or for any reason does not file such a letter, the case will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. By **August 23, 2024**, Plaintiff may, but is not required to, seek leave to amend as set forth above.

Dated: July 26, 2024
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE